STATE v. LEN LASSITER AND DENNIS BALLARD.

(Filed 17 February, 1926.)

**1. Evidence—Hearsay—Declarations.**

The testimony of a witness is hearsay and incompetent when its credibility depends upon the credibility of another, who is not a witness in the case, and the statement has not been made in the presence of a party to the action whose interest is thereby prejudiced.

**2. Same—Corroborative Testimony.**

Incompetent hearsay evidence cannot be rendered competent as corroborative, when contradictory of the testimony it is offered to corroborate.

**3. Same—Principal and Agent.**

In order to render competent declarations of a supposed agent, the agency must be shown *aliunde.*

CRIMINAL ACTION tried by *Cranmer, J.,* at March Term, 1925, of GATES.

From a judgment imposing a prison sentence the defendant Ballard appealed. New trial.

The defendants, Len Lassiter and Dennis Ballard, were indicted for offering a bribe to one J. A. Eason, a justice of the peace of Gates County. The said justice of the peace issued a warrant against the de-

fendant, Dennis Ballard, charging the possession and sale of liquor in October or November, 1924. While the case was pending before said justice of the peace the State contends that the defendant, Ballard, through Len Lassiter, approached the witness, J. P. Blanchard, who clerked in the store of Eason, and told Blanchard "that Ballard had requested him (Lassiter) to deliver a message to Mr. Eason and tell Eason that if he would dismiss the case against Ballard that Ballard would pay him one hundred dollars. Ballard was not present at the time Lassiter made this statement to Blanchard, the clerk of Eason, and Eason was not present, having gone to Norfolk on business. The only substantive evidence offered at the trial was the testimony of Len Lassiter, which is as follows: "I live in Gates County and know the defendant, Ballard. I live some distance from him. His home was raided by officers looking for whiskey. A warrant was issued for him by Mr. Eason. The trial was set for Saturday. On Wednesday before the trial Ballard was passing my home and I hailed him and had him to take a barrel of sweet corn to the station to be shipped to Norfolk. While there I told Ballard I did not believe he was guilty of having liquor for sale. I told Ballard that I thought it was a case that a justice could dispose of. On Thursday before the trial I was in Gatesville and went to see Mr. Eason. He was not at home. I saw Mr. Blanchard and asked him about Mr. Eason. Blanchard asked me if I wanted to see him about anything particularly, and I told him no, that Dennis Ballard had a case to be tried on Saturday and wanted to find out from Mr. Eason if the case could be disposed of by compromise or payment of a fine of fifty or one hundred dollars. On Saturday, the morning of the trial, I again saw Mr. Blanchard and asked if he had seen Mr. Eason, at which time he said that he had, and that Mr. Eason said it was not a matter he could dispose of. Ballard was not present. He never gave or offered me any money or any other thing of value. I had no intention of bribing Mr. Eason or doing any wrong. Ballard did not know that I went to Mr. Blanchard or Mr. Eason. I went as a friend to the negro, believing at the time it was a case that the justice had final jurisdiction over, and for no other purpose."

Thereupon the State offered J. P. Blanchard as a witness, and he was permitted to testify that Lassiter told him (Blanchard) to tell Eason that if he (Eason) would dismiss the case against Ballard that Ballard would pay Eason one hundred dollars. The defendant, Ballard, objected to this evidence. The objection was overruled, the court stating that the testimony was admitted for the sole purpose of corroborating the witness Lassiter.

The State also offered J. A. Eason, who was permitted to testify that Blanchard told him that Lassiter had told Blanchard "that Dennis Bal-

lard said that if he (Eason) would throw the case on the charge of liquor against Ballard out of court that Ballard said he would pay Eason one hundred dollars, and that he (Lassiter) knew it would be paid." The defendant, Ballard, objected to this testimony. The objection was overruled. The court admitted the testimony for the sole purpose of corroborating the testimony of the witnesses, Blanchard and Lassiter.

The defendant contends that the testimony objected to was hearsay and incompetent. The State contends that the testimony was competent not as substantive, but as corroborative evidence.

*Attorney-General Brummitt and Assistant Attorney-Generals Nash and Ross for the State.*
*Bridger and Eley for defendant.*

BROGDEN, J. Hearsay evidence is defined in *King v. Bynum,* 137 N. C., 495, as follows: "Evidence, oral or written, is called hearsay when its probative force depends in whole or in part upon the competency and credibility of some person other than the witness by whom it is sought to produce it." In the case of *Mima Queen v. Hepburn,* 7 Cranch, 290, *Chief Justice Marshall* held the principle to be that hearsay evidence is incompetent to establish any specific fact in its nature susceptible of being proved by witnesses who speak from their own knowledge. It is a rule of evidence that hearsay is in its own nature inadmissible, that this species of testimony supposes some better testimony which might be adduced in the particular case, is not the sole ground of its exclusion. Its intrinsic weakness, its incompetence to satisfy the mind of the existence of the fact, and the fraud that might be practiced under its cover, combine to support the rule that "hearsay evidence" is totally inadmissible. *Barker v. Pope,* 91 N. C., 165; *Redman v. Roberts,* 23 N. C., 479; *Daniel v. Dixon,* 161 N. C., 377; *S. v. Reid,* 178 N. C., 745; *Merrill v. Whitmire,* 110 N. C., 367. The inherent vice of hearsay testimony consists in the fact that it derives its value not from the credibility of the witness himself, but depends upon the veracity and credibility of some other person from whom the witness got his information.

It is apparent therefore that the testimony of Blanchard and Eason as to declarations of Lassiter, not in the presence of the defendant, is incompetent and constitutes prejudicial error.

However, it is urged that this testimony was admitted by the court not as substantive but as corroborative testimony. What, therefore, is corroborating testimony? Black's Law Dictionary defines corroborate as follows: "To strengthen; to add weight or credibility to a thing by additional and confirming facts or evidence." Corroborating evidence is sup-

plementary to that already given and tending to strengthen or confirm it. *S. v. Mongeon,* 108 N. W., 554; *Radcliffe v. Chavez,* 110 Pac., 701.

If the testimony of Blanchard and Eason is not competent as substantive evidence, it is not rendered competent because it tends to corroborate some other witness. *Holt v. Johnson,* 129 N. C., 138; *S. v. Springs,* 184 N. C., 768. Indeed, the evidence of Blanchard and Eason in nowise tends to strengthen or confirm the testimony of Lassiter or add to its weight or credibility, but on the contrary the testimony given by them tends to destroy the credibility of Lassiter and to greatly reduce the weight of his testimony by reason of the fact that both Blanchard and Eason unequivocally contradict Lassiter. In no aspect of the law of evidence can contradictory evidence be used as corroborating, strengthening or confirming evidence.

It is further urged that Lassiter was the agent of the defendant, Ballard. There was no proof of agency disclosed in the record except the mere declaration of the alleged agent. It is a rule of universal application in this jurisdiction that agency cannot be proved by the mere declaration of the agent. Lockhart Handbook of Evidence, sec. 154; *Summerrow v. Baruch,* 128 N. C., 202; *Daniel v. R. R.,* 136 N. C., 517; *Hunsucker v. Corbitt,* 187 N. C., 503. Of course, the agent may testify under oath as to the agency. *Sutton v. Lyons,* 156 N. C., 3.

However, Lassiter, the alleged agent, denied the agency under oath, and there was no other proof thereof except his declarations to third parties in the absence of defendant.

Upon the whole record, therefore, for the errors indicated, there must be a

New trial.